Tina Wolfson, CA Bar No. 174806
*twolfson@ahdootwolfson.com*
Theodore Maya, CA Bar No. 223242
*tmaya@ahdootwolfson.com*
Rachel Johnson, CA Bar No. pending
*rjohnson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111;
Fax: 310-474-8585

*Counsel for Plaintiff and the Proposed Classes*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELEISHA REDMOND, individually and on behalf of all others similarly situated, | Case No. 3:20-cv-3692 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| ALBERTSONS COMPANIES, INC., and Does 1-10, | |
| Defendants. | |

Plaintiff Eleisha Redmond ("Plaintiff"), by and through her counsel, brings this Class Action Complaint against Defendant Albertsons Companies, Inc. ("Defendant"), on behalf of herself and all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.      In the midst of the ongoing COVID-19 pandemic, since federal, state, and local governments around the country declared states of emergency and issued mandates requiring citizens to stay home and practice social distancing in order to avoid spreading the highly contagious novel coronavirus, which often causes a severe and sometimes fatal respiratory infection, unscrupulous sellers have taken the opportunity to profit from desperate members of the public by gouging prices of essential items—from basic necessities such as toilet paper to personal protective equipment including face masks, hand sanitizer, and cleaning agents and tools that consumers need to protect themselves.

2.      Not only is such gross misconduct unfair and inhumane, it is a criminal offense that constitutes a *per se* violation of California's Unfair Competition Law. *See* Cal. Penal. Code §§ 396(h), (i).

3.      Likewise, price gouging is prohibited by the laws of many states, and large, sophisticated retailers are well aware of their obligation to avoid such conduct. *E.g.*, N.Y. G.B.L. § 396-r; Florida Stats. Title XXXIII, § 501.160; 815 ILCS 505/2 (Illinois); N.J. Stats. Title 56, § 8-107; Or. Stats. § 401.960. Nonetheless, some sellers unfortunately have taken the opportunity to line their pockets at the public's expense.

4.      Plaintiff brings this action on behalf of herself and all others similarly situated to hold Defendant accountable for price gouging at its many grocery stores across the country and throughout California.

CLASS ACTION COMPLAINT
CASE NO. 3:20-CV-3692

## PARTIES

5.      Plaintiff Eleisha Redmond is an individual and a resident of San Francisco, California.

6.      Defendant Albertsons Companies, Inc. is a Delaware corporation with its principal place of business at 250 Parkcenter Blvd., Boise, Idaho, 83706.

7.      Plaintiff is unaware of the true names and capacities of the defendants sued as DOES 1-10, and therefore sues these defendants by fictitious names.  Plaintiff will seek leave to amend this Complaint when and if the true identities of these DOE defendants are discovered.  Plaintiff is informed and believes and thereon alleges that each of the defendants designated as a DOE is responsible in some manner for the acts and occurrences alleged herein, whether such acts or occurrences were committed intentionally, negligently, recklessly or otherwise, and that each said DOE defendant thereby proximately caused injuries and damages to Plaintiff as herein alleged, and is thus liable for the damages suffered by Plaintiff.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiff and other members of the Class are citizens of states different from Defendant.

9.      This Court has personal jurisdiction over Defendant because it conducts business in this District.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

11.     California law rightly prohibits profiteering from a public health crisis.  *See* Cal. Penal Code §§ 396(h)-(i).  In enacting some of the nation's strongest prohibitions on price gouging, California's legislature recognized that unscrupulous sellers can take

advantage of emergency conditions to overcharge consumers for goods they need to live their lives. Exploiting consumers in such a vulnerable time is contrary to basic human decency and, in California, is a criminal offense that is presumptively unlawful under California's Unfair Competition Law.

12.    Under Cal. Penal Code § 396(b):

> Upon the proclamation of a state of emergency declared by the President of the United States or the Governor, or upon the declaration of a local emergency by an official, board, or other governing body vested with authority to make that declaration in any county, city, or city and county, and for a period of 30 days following that proclamation or declaration, it is unlawful for a person, contractor, business, or other entity to sell or offer to sell any consumer food items or goods, . . . emergency supplies, medical supplies, home heating oil, building materials, . . . or gasoline or other motor fuels for a price of more than 10 percent greater than the price charged by that person for those goods or services immediately prior to the proclamation or declaration of emergency.

13.    In late 2019, a respiratory illness resulting from a novel coronavirus was first identified in Wuhan City, Hubei Province, China. That illness, now known as COVID-19, has spread across the world.

14.    In early 2020, confirmed COVID-19 cases began to appear in the U.S. and, specifically, in California and in the Bay Area.

15.    As of this writing, more than 100,000 deaths nationwide have been attributed to COVID-19, according to official statistics, though the true number may be much higher. *See, e.g.*, N.Y. Times, *Coronavirus in the U.S.: Latest Map and Case Count*, available at <https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html> (last visited June 1, 2020); N.Y. Times, *There Has Been an Increase in Other Causes of Deaths, Not Just Coronavirus*, available at <https://www.nytimes.com/interactive/2020/06/01/us/coronavirus-deaths-new-york-new-jersey.html?action=click&module=Top%20Stories&pgtype=Homepage> (last visited

CLASS ACTION COMPLAINT
CASE NO. 3:20-CV-3692

June 1, 2020) ("Public health experts have said that many of the[] additional deaths from other causes [during the time since the COVID-19 pandemic was recognized in the U.S.] may be undercounts or misdiagnoses of Covid-19, or indirectly linked to the pandemic otherwise.").

16.    California has borne a disproportionately large share of COVID-19 cases and deaths.  *See, e.g.*, L.A. Times, *Tracking coronavirus in California*, available at https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/   (last visited June 1, 2020) (reporting over 100,000 confirmed cases of, and 4,218 deaths from, COVID-19 in California as of June 1, 2020).

17.    On January 30, 2020, the World Health Organization declared a global health emergency due to the COVID-19 pandemic.

18.    On February 3, 2020, Santa Clara County declared California's first state of emergency due to the COVID-19 pandemic.

19.    On February 25, 2020, San Francisco Mayor London Breed declared a state of emergency due to the COVID-19 pandemic.

20.    On March 4, 2020, Governor Gavin Newsom of California declared a State of Emergency in light of the COVID-19 pandemic.

21.    On March 13, 2020, President Donald Trump declared a state of emergency due to the COVID-19 pandemic.

22.    Through Executive Order N-44-20, dated April 3, 2020, Governor Newsom extended California's price gouging prohibition for all products under Penal Code § 396(b) until September 4, 2020.  *See* Executive Order N-44-20, available at <https://www.gov.ca.gov/wp-content/uploads/2020/04/4.3.20-EO-N-44-20-text.pdf> (last visited June 1, 2020).

23.    Under that Executive Order, no person, business, or other entity may:

In addition to the prohibitions set forth in Penal Code section 396, a person or other entity (including, but not limited to, any business enterprise of any kind) shall not—from April 4, 2020 until September 4, 2020, and except as set forth below—sell or offer to sell any item from among the following

CLASS ACTION COMPLAINT
CASE NO. 3:20-CV-3692

categories of goods for a price that is more than 10 percent greater than the highest price charged by that person or entity for that item on February 4, 2020:

- Food items;
- Consumer goods;
- Medical or emergency supplies; and
- Any other materials previously designated by the U.S. Secretary of Health and Human Services as Scarce Materials or Threatened Materials pursuant to section 102 of the Defense Production Act, 50 U.S.C. § 4512.

*Id.*

24.    Defendant owns a large number of supermarket chains under a variety of brands, including *inter alia* Safeway stores.  Unfortunately, Defendant sold numerous items far in excess of their pre-pandemic prices, in direct violation of Penal Code § 396 and Executive Order N-44-20.

25.    Plaintiff made a number of purchases from the Safeway located at 2020 Market St., San Francisco, CA 94114, in the days, weeks, and months after the governor of California declared a state of emergency, for items that Defendant priced far in excess of 10% above the pre-emergency price for such items.

26.    For instance, on or about April 13, 2020, Plaintiff paid $18.99 for Angel Soft toilet paper normally priced at $10-11 at that same Safeway location.

27.    Plaintiff brings this action to hold Defendant liable for its unlawful price increases during the COVID-19 pandemic.

## CLASS ACTION ALLEGATIONS

28.    Plaintiff seeks relief in her individual capacity and as representative of all others who are similarly situated.  In accordance with Fed. R. Civ. P. 23(a), (b)(2), and/or (b)(3), Plaintiff seeks certification of a California-state-wide class and a nationwide class preliminarily defined in the following paragraphs.

29.    The California Class is preliminarily defined as:

All persons who purchased, in California, any consumer food items or goods, goods used for emergency cleanup, emergency supplies, medical supplies, home heating oil, or other goods or

CLASS ACTION COMPLAINT
CASE NO. 3:20-CV-3692

services encompassed by Cal. Penal Code § 396(b), from a store owned by Albertsons Companies, Inc., on or after February 4, 2020 at a price 10 percent greater than the price charged such store for the same such good or service on February 2, 2020, or immediately prior to any declaration of a state of emergency relating to the COVID-19 pandemic.

(The "California Class.")

30. The Nationwide Class is preliminarily defined as:

All persons who purchased, in the United States, any consumer food items or goods, goods used for emergency cleanup, emergency supplies, or medical supplies from a store owned by Albertsons Companies, Inc., on or after January 31, 2020 at a price 10 percent greater than the price charged such store for the same such good or service on January 30, 2020, or immediately prior to any declaration of a state of emergency relating to the COVID-19 pandemic.

(The "Nationwide Class" and, together with the California Class, the "Classes.")

31. Excluded from the Classes are Defendant, including any entity in which any Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families.

32. <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The members of the Classes are so numerous that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, the Classes are expected to include millions of California consumers and millions of U.S. consumers.

33. <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether Defendant sold food and consumer goods at inflated prices during the COVID-19 pandemic;

CLASS ACTION COMPLAINT
CASE NO. 3:20-CV-3692

b.  Whether those price increases were in excess of the 10% limit set forth in California Penal Code § 396(b);

c.  Whether and the extent to which consumers in California were harmed by Defendant's unlawful price increases;

d.  Whether and the extent to which consumers throughout the U.S. were harmed by Defendant's unlawful price increases;

e.  The extent to which Defendant was unjustly enriched;

f.  Whether Defendant should be subjected to punitive damages, and the appropriate amount;

g.  Whether Plaintiff and the other Class members were injured by Defendant's conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief; and

h.  Whether Plaintiff is entitled to injunctive relief and the appropriate scope of any such relief.

34.    <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of those of other Class members because Plaintiff, like every other Class member, purchased products from Defendant at prices that were unlawfully inflated during the COVID-19 pandemic.

35.    <u>Adequacy of Representation</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiff's Counsel are competent and experienced in litigating class actions.

36.    <u>Superiority of Class Action</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Classes is impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

37.     Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Defendant acted or has refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

**COUNT I**
**Violation of California's Unfair Competition Law,**
**Bus. & Prof. Code §§ 17200 *et seq.***
**(On behalf of Plaintiff and the California Class)**

38.     Plaintiff incorporates the substantive allegations above as if fully set forth here.

39.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, prohibits any "unlawful, unfair, or fraudulent business acts or practices."

40.     Any violation of California Penal Code § 396 "constitute[s] an unlawful business practice and an act of unfair competition within the meaning of Section 17200 of the Business and Professions Code." Cal. Penal Code § 396(i).

41.     As alleged above, Defendant violated California Penal Code § 396(b) because, after states of emergency were declared in California due to the COVID-19 pandemic, Defendant sold and offered to products covered by that statute at prices "10 percent greater" than the price Defendant charged "immediately prior to the proclamation or declaration of emergency." Cal. Penal Code § 396(b).  The items Defendant sold in violation of that statute include "consumer food items or goods, goods or services used for emergency cleanup, emergency supplies, [and] medical supplies." *Id.*

42.     On information and belief, Defendant's price increases were not directly attributable to additional costs imposed on Defendant by the suppliers of the such goods, and Defendant increased prices on many such goods in excess of 10% even when accounting for any additional costs and the markup Defendant customarily applies to the Protected Products.  *See id.*

43.     Defendant's conduct was unscrupulous, offended established public policy, and was fraudulent.

44.     The harm caused by Defendant's conduct greatly outweighs any benefit to consumers.

45.     As a result of the conduct alleged herein, Plaintiff and other California Class members suffered injuries in fact and lost money.

46.     Plaintiff and other California Class members are entitled to restitution, injunctive relief, and reasonable attorney's fees and costs.

## COUNT II
### Negligence
### (On behalf of Plaintiff and the Nationwide Class)

47.     Plaintiff incorporates the substantive allegations above as if fully set forth here.

48.     Defendant has a non-delegable duty to apply a level of care commensurate with the foreseeable harms arising from its control, maintenance, and management of grocery stores on which many consumers depend to obtain the basic necessities of life, including food.

49.     This encompasses a duty to ensure that, during a declared public emergency, it does not sell food, consumer goods including toilet paper, and other goods and services including those described in California Penal Code § 396(b) at excessive prices.

50.     Defendant's duty to prevent price gouging in California during the COVID-19 pandemic is reinforced by California Penal Code § 396(b), just as it is in other states through other states' similar price gouging laws. *E.g.*, N.Y. G.B.L. § 396-r; Florida Stats. Title XXXIII, § 501.160; 815 ILCS 505/2 (Illinois); N.J. Stats. Title 56, § 8-107; Or. Stats. § 401.960.

51.     Defendant has the ability to prevent price gouging at its stores during a declared emergency.  It has oversight and control over the products sold at its stores, and the prices charged for them.

52.     Defendant, its agents, and/or employees, failed to exercise ordinary care and failed to comply with existing standards of care in failing to ensure that food and other necessities were not sold at more than 10% their pre-pandemic prices following the declarations of a state of emergency by local, state, and federal officials due to the COVID-19 pandemic.

53.     Despite Defendant's resources and ability to control its own sales, it failed to prevent unlawful price increases at its stores.

54.     Defendant knew that, because of its failure to exercise reasonable care, consumers such as Plaintiff throughout the country would be overcharged.

55.     Defendant's actions and omissions resulted in thousands, if not millions, of violations of California's price gouging statute, California Penal Code § 396(b), as well as violations of other states' price gouging laws, including those set forth above. Accordingly, Defendant's conduct constitutes negligence *per se*.

56.     Defendant's negligence was the proximate cause and substantial factor in causing the economic loss suffered by Plaintiff and other Nationwide Class members. Had Defendant exercised reasonable care, Plaintiff and other Nationwide Class members would not have paid excessive amounts for basic necessities they purchased from Defendant's stores.

57.     Plaintiff and the Nationwide Class are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all Class members proposed in this Complaint, respectfully requests that the Court enter judgment in her favor and against Defendant, as follows:

A.     For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Classes;

B.     For an award to Plaintiff and other Class members of their actual damages, punitive damages, and any other form of monetary relief allowed by law;

CLASS ACTION COMPLAINT
CASE NO. 3:20-CV-3692

C.     For an award to Plaintiff and other Class members of restitution, disgorgement, or other equitable relief as the Court deems proper;

D.     For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein and requiring Defendant to implement reasonable systems and redundancies to ensure that it does not commit such price gouging in the future;

E.     For an award to Plaintiff and other Class members of pre-judgment and post-judgment interest as allowed under the law;

F.     For an award to Plaintiff and other Class members of their reasonable attorney's fees and costs of suit, including expert witness fees;

G.     For an award to Plaintiff and other Class members of such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury of all claims so triable.


Dated:  June 3, 2020                            Respectfully submitted,


                                                **AHDOOT & WOLFSON, PC**


                                                _____
                                                Tina Wolfson
                                                Theodore W. Maya
                                                Rachel Johnson
                                                **AHDOOT & WOLFSON, PC**
                                                10728 Lindbrook Dr.
                                                Los Angeles, California 90024
                                                Telephone: 310-474-9111
                                                Facsimile: 310-474-8585

                                                *Counsel for Plaintiff and the*
                                                *Proposed Classes*

CLASS ACTION COMPLAINT
CASE NO. 3:20-CV-3692